# Town of Manchester v. Henry B. Cherbonneau and Irene Cherbonneau

[300 A.2d 548]

No. 50-72

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed February 8, 1973

*Carmody, Whalen & O'Dea*, Manchester, for Plaintiff.

*William C. Sennett, Esq.*, Bennington, for Defendants.

**Shangraw, C.J.** This action was commenced when the plaintiff, Town of Manchester, sought an injunction in the Bennington County Court to enjoin the defendants from plugging a culvert which drained water on their property. The defendants answered and interposed a counter-claim alleging, in substance, that the waters passing through the culvert, which were polluted and contaminated, spread over areas of their property resulting in damage. Defendants also requested that plaintiff be enjoined from continuing to collect and dump the polluted waters on their property.

The case was tried by court, findings of fact were made, and a judgment followed permanently enjoining defendants from plugging, blocking, stopping or otherwise obstructing the culvert which empties water onto their lands at or near the southwesterly corner thereof. The defendants' counter-claim was also dismissed. Defendants have appealed to this Court for review.

The culvert in question is located beneath U.S. Route 7 which runs through the Town of Manchester in a north-south direction. U.S. Route 7 is owned by the town. Sometime prior to 1931 the culvert was installed by the town for the purpose of carrying both surface waters and stream waters from an area west of the highway to an area east of the highway. At the time the culvert was installed it began at a point which is now the southwesterly corner of U.S. Route 7 and Hillvale Drive and ran in a northeasterly direction beneath the highway to lands adjacent to the defendants, now owned by one George Heaslip. In 1936 a prior owner of the lands now owned by George Heaslip connected a culvert to the easterly end of plaintiff's culvert and ran it across his lands in a northeasterly direction. As a consequence, waters entering the westerly end of plaintiff's culvert discharge onto the defendants' lands.

On the east side of U.S. Route 7 a water drain empties into plaintiff's culvert. The waters collected by the drain also discharge onto the defendants' lands.

In 1931 the defendants purchased their lands, which are located on the east side of U.S. Route 7 and north of the lands now owned by George Heaslip. The defendants purchased these lands subject to a servitude which gave the

plaintiff the right to run the culvert beneath the highway. At that time the waters discharged by the culvert ran across the defendants' lands in a northeasterly direction. When the defendants erected their home and filled and graded their lands the direction of the flow of the water was not changed. Until 1966 òr 1967 the waters collected by plaintiff's culvert ran onto defendants' lands during periods of the year, but did not interfere with defendants' use and enjoyment of their premises. However, since that time during periods of thaw or high water, the waters, including pollutants, entered the defendants' home and caused damage.

In order to prevent the waters and pollutants from damaging their residence, the defendants permanently plugged the easterly extension of the culvert. This caused the waters to fill the culvert, backup and flow onto U.S. Route 7.

During the course of the proceedings in the trial court, the defendants offered to show that pollutants entered plaintiff's culvert from two sources. This testimony was excluded by the trial court, and the defendants contend it was erroneous for the trial court to do so. The first source of pollution the defendants sought to introduce testimony relating to was a Shell service station located along U.S. Route 7, south of the culvert. The other source of pollution about which the defendants sought to introduce testimony was a septic system located on the Richardson property on the west side of U.S. Route 7. It is the defendants' contention such testimony was relevant because it went to the reasonableness of the quality of the water, in that it tended to show the plaintiff impaired the quality of the waters to those below.

██ When a town undertakes to construct a culvert over a natural watercourse while in the process of building and maintaining its highways, it must do so as to avoid any unnecessary damage to persons owning adjacent lands. It is not only the town's duty to construct such a culvert, but also to keep it in such a condition that it will not obstruct the stream and allow the waters to flow back across the highway and damage the lands above. *Sargent* v. *Town of Cornwall*, 130 Vt. 323, 326–27, 292 A.2d 818 (1972) ; *Haynes* v. *Burlington*, 38 Vt. 350, 360 (1865).

In the case at bar the findings disclose that at no time has the plaintiff done anything to change or increase the flow of waters onto the defendants' lands. Indeed the testimony offered by the defendants as to sources of the pollution does nothing to refute this. Rather, the testimony which the defendants sought to have admitted clearly shows that third persons, not made parties to this action, impaired the quality of the water. In view of the fact the Town of Manchester did nothing to block or otherwise impair the quality of the waters, it cannot be held liable for the damages to the defendants' property caused by the pollutants. E.g. *Scanlan* v. *Hopkins*, 128 Vt. 626, 631, 270 A.2d 352 (1970); *Snow* v. *Parsons*, 28 Vt. 459, 462 (1856).

The defendants also contend that surface waters, containing salt, which the town collects at the catch basin that drains into the culvert, are being unreasonably diverted onto the defendants' lands.

A factual situation similar to that in the case at bar was passed upon by this Court in *Noble* v. *Village of St. Albans*, 56 Vt. 522 (1884). In *Noble* the plaintiffs claimed the village was liable for surface waters, containing sewage, which drained from a culvert onto their lands causing damage. There, the village was held not liable because it had no notice of the sewage discharged from its culvert, and because the sewage was discharged by a third person, not a party to the action. *Noble* v. *Village of St. Albans, supra,* 56 Vt. at 524. In the case at bar, as in *Noble,* no showing was made by the defendants that the Town of Manchester had notice of polluted waters being collected at its catch basin. Moreover, the defendants also failed to show the source of the salt about which they complain.

Finding of Fact No. 15 made by the trial court states as follows:

"At no time has plaintiff done anything to change or increase the flow of the waters through the culvert onto defendants' lands."

The defendants contend there is no basis for such a finding because the plaintiff drains surface waters into the culvert through a catch basin. In order for finding No. 15 to be set

aside, it must be shown to be clearly erroneous. V.R.C.P. Rule 52(a); e.g. *Green Mountain Marble Co.* v. *State Highway Board,* 130 Vt. 455, 457, 296 A.2d 198 (1972).

Catch basins, as a means of providing an outlet for naturally flowing surface waters, have been frequently held to be necessary for the purpose of maintaining a highway. The need for such outlets is obvious, and, as a consequence, it cannot be said the mere existence of a catch basin to drain surface waters naturally collecting by a highway constitutes a change or increase in the flow of waters which would otherwise flow in that direction. *Noble* v. *Village of St. Albans, supra; Sanborn* v. *Village of Enosburg Falls,* 87 Vt. 479, 89 A. 746 (1914); but see *Whipple* v. *Village of Fair Haven,* 63 Vt. 221, 21 A. 533 (1890). Thus, finding of fact No. 15 cannot be shown to be clearly erroneous, and it must stand.

In their brief the defendants argue the town has taken portions of their lands without making just compensation. This point was not made or urged in the trial court. Having been made for the first time in this Court, it is not appropriate for this Court to pass upon it. *Heaton Hospital, Inc.* v. *Emrick and State,* 128 Vt. 405, 408, 264 A.2d 806 (1970).

*Judgment affirmed.*