## Frank Thompson
### v.
## Town of Stannard

[211 A. 2d 253]

April Term, 1965

Present: **Holden, C. J., Shangraw, Barney, Smith and Keyser, J. J.**

Opinion Filed June 1, 1965

*Maxwell L. Baton* for plaintiff.

*Lee E. Emerson* for defendant.

**Holden, C. J.** This is an action of tort, instituted under the high-way law to recover for personal injuries claimed to have been suffered

by reason of the insufficiency and want of repair of a culvert. The statutory provision invoked is 19 V.S.A. §1371: "If damage occurs to a person, or his property, by reason of the insufficiency or want of repair of a bridge or culvert which the town is liable to keep in repair, the person sustaining damage may recover the same in an action of tort on this statute.—"

Shortly before noon on October 19, 1958, the plaintiff was riding as a passenger with other members of his family in an automobile operated by his son-in-law, Stewart Silver. The car was traveling west on the defendant's town highway leading from Stannard Village to Greensboro Bend. The culvert in question traversed the highway furnishing drainage from a field about highway level on the north to a lower level meadow on the south.

At the north end of the culvert there was a hole in the highway surface which extended about one foot into the traveled portion of the dirt road. The presence of the depression in the road was obscured by fallen leaves which had collected in the pit.

The evidence was undisputed that the car in which the plaintiff was riding was traveling at a speed of twenty to twenty-five miles an hour. It left the highway at or near the culvert and crashed into a maple tree, standing twenty-three feet west of the culvert at the edge of the highway.

Bruce Kallahan, a Vermont State Police officer summoned to investigate the accident, observed the wheel tracks which marked the course of travel of the Silver vehicle on the graveled surface of the highway. He testified the tracks led from the right side of the vehicle, as it was lodged against the tree, and passed through the hole above where the culvert intersected the road.

The police officer's testimony on this point was disputed by witnesses for the defendant who visited the scene. They gave evidence that they observed tracks, east of the culvert, which led to the damaged car. The defendant's evidence was that the wheel tracks did not cut across the pit, but went astride it.

After some four hours of deliberations which were interrupted by requests for further instructions, the jury found for the defendant. The plaintiff appeals and assigns error to the manner in which the court defined and explained the issues.

Early in the charge, the court defined the first issue upon which the plaintiff had the burden of proof was "(1) that the accident which

caused the injury occurred while the plaintiff was passing over the culvert. That is the first thing they must prove — that the injury occurred while he was passing over the culvert in question. (2) that the culvert was insufficient or in want of repair. That is the second thing he must prove. (3) That this insufficiency or want of repair, if any, was the direct cause of the injury sustained." These issues were repeated in substantially the same context ten or more times during the course of the instructions.

On one such occasion, the court commented: "-the first was that the accident which caused the injury occurred while the plaintiff was passing over the culvert. Liability under the statute is restricted—. It is limited to bridges, culverts and their approaches. The highway is not included. The statute does not go that far. So for the plaintiff to recover, the accident must have occurred while passing over the culvert; otherwise there can be no recovery. Now that is number one — must have occurred while the vehicle in which he was riding was passing over the culvert."

The plaintiff objected at the trial to the numerous statements by the court that it was incumbent on the plaintiff to show that "injury occurred while passing over the culvert". His exception suggested a correction to indicate that his burden was to show the injury was caused while passing over the culvert by reason of its insufficiency.

The full text of the instructions came very near to directing a verdict for the defendant on the first issue as defined by the court. At least the language used by the court is susceptible to the construction that the plaintiff was required to establish that his injuries were experienced while the vehicle was in the very act of passing over the culvert. By the same token it permits the interpretation that if no injuries were sustained until after the automobile had passed entirely over and beyond the culvert, there could be no recovery.

This was a prominent theory of the defense, and the defendant urged it upon the trial court as a ground for granting its motion for a directed verdict at the close of the plaintiff's evidence. On appeal, the defendant contends that this construction of the charge was sound. And the defendant maintains that since the accident resulted some twenty three feet beyond the culvert, any undue emphasis given this issue was harmless since the cause should not have survived the town's motion for a directed verdict.

It is abundantly clear from the record that this aspect of the instructions troubled the jury. After deliberating more than three hours

the jury returned into court. The foreman advised the presiding judge that they had not reached a verdict. He went on to explain "we have a question in our mind on your charge". The court restated the issues as originally given. When asked if there was anything further, the foreman answered: "Your Honor, the doubt in our minds seems to be on the first article for the plaintiff, which I believe was presented by you several times, with a little different wording."

The confusion which attended the instructions to the jury and its deliberation concerning the place of injury undoubtedly developed from some of the earlier cases dealing with actions on this statute in different factual settings, notably *Ford v. Town of Braintree*, 64 Vt. 144, 146, 23 Atl. 633.

The opinion in that case points out that prior to 1880, towns were liable for damages that arose from insufficiency of highways as well as bridges. Liability for highway disrepair was later removed except where culverts, bridges and their approaches were directly involved. In *Ford v. Braintree*, a highway was washed out by reason of overflow from a culvert that was insufficient to carry off the drainage for which it was intended. It was held that the defect which caused the accident had to be at the site of the culvert in order to charge the town. Liability would not attach if the defect which produced the misadventure was on the open highway, some distance from the sluice.

Consequently, a hole in the highway some five rods distant from the culvert was held to be beyond the reach of the statute. And the court stated: "To come within the act the accident must occur, and the injury be sustained, while the traveler is passing over the bridge, culvert, or sluice, or that portion of the road which constitutes the approaches to it, so that the insufficiency and want of repair of the structure itself, or its approaches, is the direct cause of the injuries sustained."

To the same effect are *Tinkham v. Town of Stockbridge*, 64 Vt. 480, 484, 24 Atl. 761; *Widham v. Town of Brattleboro*, 105 Vt. 210, 213, 166 Atl. 22; *Zeno Bakery, Inc. v. State*, 105 Vt. 370, 376, 166 Atl. 379. But in each of these instances the critical inquiry was the location of the defect in relation to the bridge or culvert sought to be charged as the cause of the accident. The cause which sets the chain of events in motion must be at the culvert.

The precise point where the final harm is done is not thus restricted. So in this instance, the statute did not require that the plaintiff sustain his injuries on the culvert. Nor was it required, as the defendant

contends, that the vehicle in which he was riding be halted at the site of the defective conduit. It was enough that the car went out of control by reason of the disrepair.

The language of the charge was misleading. And we are persuaded from the requests of the jury during their consideration of the case that the jury was misled. At least the instructions had the capability of taking the decision away from the controlling issue of causation and placing it upon the fact that the point of impact where the injuries were incurred was some distance from the site of the collapsed culvert.

It is the duty of the trial court to instruct the jury clearly and correctly on all issues without affording undue prominence to any fact or claim. We are not concerned that the question of the place of impact might have been disposed of as a question of law. To be sure, the evidence was undisputed in this regard, but the court made it a jury question. It became a vital factor in the jury's deliberations. Since the cause was submitted on an incorrect statement of the issues, the plaintiff's exceptions are sustained. *Morse* v. *Ward,* 102 Vt. 433, 436, 150 Atl. 132; *Kinsley* v. *Willis,* 120 Vt. 103, 112, 132 A. 2d 163.

The defendant seeks to avoid a reversal of the judgment below on the strength of other grounds raised in its motion for a directed verdict, at the close of the plaintiff's case. The motion was not renewed after all the evidence was in. The presentation of evidence by the defendant after the denial of such a motion has been held to constitute a waiver of the questions raised at the conclusion of the plaintiff's case. *Mattison* v. *Smalley,* 122 Vt. 113, 116, 165 A. 2d 343; *Hobbs & Son* v. *Grand Trunk Railway Co.,* 93 Vt. 392, 397, 108 Atl. 199. But since some of these problems may arise on retrial we will consider them.

The defendant urged that the defect in the culvert was a latent one in that it was covered by leaves and for this reason, no liability can attach to the town. The evidence is undisputed that the cave-in was not of recent origin. Trooper Kallahan testified that it contained an accumulation of dead leaves "that appeared to have been there for some time." The earth above the culvert had gone and the metal in the culvert gave no indication of a recent breakthrough. This evidence refutes the contention that the surface of the highway above the culvert suddenly gave way under the weight of the motor vehicle through some latent defect which was not known or discoverable as in *Prindle* v. *Fletcher,* 39 Vt. 255, 258. Then too, the Prindle case involved a highway defect rather than a culvert.

There was no affirmative evidence that the officers had

notice of the defect. The statute requires none. See *Bardwell* v. *Town of Jamaica*, 15 Vt. 438, 443. Since the condition was not new, the jury might well infer that the town, in working the highways, should have known of the existence of the state of disrepair at this location. Moreover, several of the town officers testified for the defendant. We have been unable to find any denial that they knew of the condition. This was a matter peculiarly within their own knowledge and the town's failure to disclaim entitled the plaintiff to the benefit of an inference that the condition was not unknown. *State* v. *Teitle*, 117 Vt. 190, 211, 90 A. 2d 562; *Pacific Lumber Agency* v. *National Aircraft Materials Corp.*, 108 Vt. 10,1 7, 182 Atl. 192.

■ Lastly, the defendant contends the action is barred by reason of the manner in which the town was notified of the pending claim. 19 V.S.A. §§ 1373 and 1374 require that the plaintiff notify the selectmen of the town sought to be charged of the time, place and circumstances of the occurrence. The notice must be in writing and must be given within twenty days of the event.

In this instance, the plaintiff caused written notice to be served on the selectmen of the defendant, within the time required, by the sheriff of Orleans County. The defendant complains because the notice was not communicated by the plaintiff personally and there was no showing that the sheriff was authorized to act for him in this function.

The argument is without substance. The method adopted by the plaintiff was full and adequate compliance with the letter and purpose of the statute.

*Judgement reversed and cause remanded.*