Edward P. Lincoln and Mary Lincoln v. Edward E. Emerson,
Edward E. Emerson, Jr., and Strafford Associates, Inc.

[404 A.2d 508]

No. 83-78

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed June 5, 1979

302

*Rice & Knosher,* Montpelier, for Plaintiffs.

*David W. Reeves,* Law Offices of *Thomas P. Wright,* Woodstock, for Defendants.

**Larrow, J.** Plaintiffs obtained a general verdict and judgment thereon for damages occasioned by misrepresentations made in the course of a sale to them of farm premises in Randolph. Edward E. Emerson and Edward E. Emerson, Jr., against whom the judgment runs, appeal. Dismissal as to the corporate defendant, Strafford Associates, Inc., was entered during trial. Claimed errors relate to the sufficiency of the evidence to meet the "clear and convincing evidence" test, the standard of damages charged with respect to one claim of misrepresentation, and a ruling of the trial court with respect to the examination in chief of one of the individual defendants.

In early 1973, Strafford Associates, Inc., a real estate brokerage having the individual defendants as officers, advertised for sale a dairy farm in Randolph owned by them personally. Plaintiff Mary Lincoln answered the ad by phone, and Edward Emerson, Jr., as arranged, showed the plaintiffs

several farms, including the one in question. They bought a portion of it in April, 1973, with an option on the remainder, which they exercised in July, 1976. The claims here relate only to the 1973 purchase.

■ This action was begun in 1976, and, as eventually amended, the complaint contained three counts of misrepresentation. The first related to barn conditions and their cause, the second to a statement that a thirty-acre field had been reseeded, and the third to the usability of a hayfield on the premises. Seemingly without objection, the case was submitted to the jury generally, without separation of the counts, interrogatories or special verdicts. Therefore, to avoid reversal, the evidence must be sufficient to support each of the claims of the plaintiffs, because otherwise the judgment could be based, in part, upon an erroneous finding. Cf. *Woodmansee* v. *Stoneman*, 133 Vt. 449, 454, 344 A.2d 26, 29 (1975) (principle applied in a criminal case).

■ The parties do not question the applicable rule with respect to plaintiffs' burden of proof, *i.e.*, that fraud must be shown by clear and convincing evidence. *Bardill Land & Lumber, Inc.* v. *Davis*, 135 Vt. 81, 82, 370 A.2d 212, 213 (1977). The defendants contend, however, that appellate scrutiny requires the rejection of a claim supported only by the testimony of the plaintiffs and contradicted by that of the defendants.

■ Our Court does not seem to have outlined the scope of appellate review in connection with the "clear and convincing" test. And we are aware of the sharp conflict that exists in other jurisdictions. Note, *Appellate Review in the Federal Courts of Findings Requiring More than a Preponderance of the Evidence*, 60 Harv. L. Rev. 111 (1946). The conflict is clearly delineated in *Stromerson* v. *Averill*, 22 Cal. 2d 808, 141 P.2d 732 (1943), and the dissent of Mr. Justice Traynor therein. There the majority held that the test on appellate review was whether or not there was substantial evidence to support the conclusion of the trial court, and that, present such evidence, it was for the trial court to determine whether the evidence in question was clear and convincing. Mr. Justice

Traynor urged a higher standard, that of determining whether the trier of facts could reasonably conclude that it is "highly probable" that the fact exists. *Id.* at 817–18, 141 P.2d at 737. A third, even stricter, standard akin to that of proof beyond a reasonable doubt, also has judicial following. Under it the testimony of one witness, diametrically contradicted by that of another, is insufficient to meet the burden. *Laughlin* v. *McConnel,* 201 Pa. Super. Ct. 180, 183–84, 191 A.2d 921, 923–24 (1963). This test we reject out of hand. Fraudulent representations often rely upon confidentiality for their effectiveness; they are not made as public pronouncements. However convincing a defrauded plaintiff might be on the stand, he could not prevail, where contradicted, without corroboration. Plain justice would often be subverted, in our view, by adherence to such a standard.

■ Reduced to a choice between the other two alternatives, we opt for the view of the majority in *Stromerson, supra.* It places more reliance upon the reactions of the trier of fact with opportunity to observe and assess the testimony not found by review of an appellate record; it is relatively simple of application in a field where narrow and subtle distinctions may upset the result of a fair trial because it was not "perfect," and it is more in accord with the views we have expressed with respect to the parallel rule, in criminal cases, of proof beyond a reasonable doubt. There we view the evidence in the light most favorable to the State, and decide whether it fairly and reasonably supports the finding of guilt. *State* v. *Benoit,* 136 Vt. 431, 432–33, 392 A.2d 406, 407 (1978). If the trial court, with substantial evidence before it, concludes that this evidence is clear and convincing, we will not upset that finding.

The adoption of this view quickly disposes of two of defendants' contentions.

■ The barn here in question was being managed by a tenant, and was in deplorable condition, unclean and wet. Although disputed, there was evidence from the plaintiffs that defendant Emerson, Jr., told them cleaning would remedy the conditions. In fact, this was only a partial remedy, as some of the conditions were attributable to recurrent flooding.

The evidence, upon review, does not compel a conclusion that the representation was made that cleaning would be a complete cure, but it certainly permits such an inference. The jury was correctly charged, without objection, that clear and convincing proof was required. It so found, and we will not upset that result.

■ The second contention relates to a claimed representation that a field had recently been reseeded, when in fact it had not. The test we have outlined was met, despite the fact that the making of the statement was a subject of contradictory evidence. No error appears in the submission of this issue to the jury.

■ The third claim of false representation is somewhat more tenuous. There was evidence that defendants represented the hilltop field as a field in which hay grows and to which there is an access road. The plain inference of this statement seems to be that there was a practical, usable hayfield. But there was also plentiful testimony that the field could not be hayed, at least not without access over another's property, because of deficiencies in the farm access road. The inference of stated usability as a hayfield is supported, and no error appears in this respect. See *Lyndonville Savings Bank & Trust Co.* v. *Peerless Insurance Co.*, 126 Vt. 436, 440–41, 234 A.2d 340, 343 (1967); *Garafano* v. *Neshobe Beach Club, Inc.*, 126 Vt. 566, 573, 238 A.2d 70, 75 (1967). Defendants' further claim that, as a matter of law, the plaintiffs were not entitled to rely upon the representation of accessibility was not presented below, and is therefore waived. *Pond* v. *Carter*, 126 Vt. 299, 301, 229 A.2d 248, 250 (1967).

Error is also assigned with respect to the instructions to the jury on the issue of damages resulting from the lack of accessibility of the hayfield. Replacement cost was included as a permissible element of damage. We do not reach the propriety of this instruction. The charge was unobjected to in this particular, and defendants' only request to charge on the subject of damages did not touch upon the issue. Whatever its merits, the issue is waived. *Palmisano* v. *Townsend*, 136 Vt. 372, 374–75, 392 A.2d 393, 395 (1978).

■ Defendants' last claim of error relates to a ruling of the trial court dealing with the examination in chief of defendant Emerson, Jr. Originally overlapping appearances had been entered for the defendants, that of Attorney Wright for the individual defendants and that of Attorney Bricker for Emerson, Jr., and Strafford Associates, Inc. At some point, confusion and overlapping pleadings resulted, and the record reflects an understanding by the court and counsel for the plaintiffs, without objection from the defendants, that Wright would represent the individual defendants and Bricker the corporate defendant, Strafford. Accordingly, when Wright requested that examination of Emerson, Jr., be conducted by Attorney Bricker, rather than himself, the court denied the request, with the suggestion that such examination, if desirable, could be carried out during Strafford's case in chief. Before that time came, however, plaintiffs dismissed their action as to Strafford. Defendants argue that because of this "clever tactic" Emerson, Jr., was denied his "full opportunity" to respond to plaintiffs' charges, giving rise, before the jury, to an inference of liability.

We see neither error nor prejudice in the ruling. Emerson, Jr., was not precluded from taking the stand; he was merely precluded from being examined in chief by an attorney whose appearance had, without objection, been confined to the corporate defendant. Neither attorney made any objection to the dismissal of the action as to Strafford. Both attorneys had already examined the witness at length during the plaintiffs' case. No motion was made to reopen defendants' case for cause, under the broad discretion of the court. See Barney v. Quaker Oats Co., 85 Vt. 372, 405, 82 A. 113, 127 (1912). In our view, if the rights of Emerson, Jr., were prejudiced, that result followed from the inaction of trial counsel, rather than from the ruling of the court. That ruling was an action to preserve the normal course of trial, rather than to subvert it, and was well within the trial court's range of discretion. Where no party was precluded by the ruling from presenting his case, no prejudice is shown. In re A. C., 134 Vt. 284, 286, 357 A.2d 536, 537 (1976).

*Judgment affirmed.*