*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

**ENTRY ORDER**

SUPREME COURT DOCKET NO. 2013-047

MAY TERM, 2013

In re T.P., Juvenile }   APPEALED FROM:
}
}   Superior Court, Orleans Unit,
}   Family Division
}
}   DOCKET NO. 19-4-09 Osjv

Trial Judge: M. Kathleen Manley

In the above-entitled cause, the Clerk will enter:

Father appeals termination of his parental rights to his daughter T.P., born in October 2007. On appeal, father argues that the court's order is erroneous because it "dooms" T.P. to long-term foster care without a compelling reason. We affirm.

T.P. first came into the custody of the Department for Children and Families (DCF) in October 2008 due to medical neglect. She was placed back in her parents' care in January 2009 under a conditional custody order. While there, a petition to have T.P. adjudicated a child in need of care or supervision (CHINS) was filed based on illicit drug dealing from the home, and marijuana and a large dagger left within reach of the child. T.P. was transferred to DCF custody under an emergency care order and placed in a foster home. The parents stipulated that T.P. was CHINS because she was without proper parental care. In May 2009, T.P. was placed with her paternal grandparents under a conditional custody order.

In November 2010, T.P.'s attorney and guardian ad litem (GAL) filed a termination petition. In March 2011, all parties agreed that a permanent guardianship would be set up and an order issued in April 2011 vesting permanent guardianship with the paternal grandparents. The order found by clear and convincing evidence that neither parent was capable of providing adequate care for the child and that returning the child to the parents was not reasonably likely. The guardianship contained conditions relating to the child's health and contact with the parents. Throughout the time the child was with her grandparents, the foster mother remained connected, by providing transportation for T.P., assisting with getting T.P. to medical appointments, and arranging for T.P. to attend preschool. The foster parents also provided respite care for T.P. while she was with her grandparents. In February 2012, DCF filed a petition alleging that the child was CHINS for lack of proper parental care because the grandparents had failed to comply with the conditions of the guardianship order. Custody reverted back to DCF, and DCF placed T.P. back with her foster parents in March 2012, where she has remained.

In April 2012, the permanent guardianship with grandparents was terminated. The court dismissed the February 2012 CHINS petition, and reinstated the CHINS docket from 2009. In June 2012, DCF filed a petition to terminate the parents' residual rights. The court held a hearing over three days. On the first day of hearing, mother voluntarily relinquished her rights.

In December 2012, the court issued a written order terminating father's rights. The court found that the revocation of the guardianship was a change of circumstances. As to T.P.'s best interests, the court found that T.P. has made "amazing progress" since moving into the foster home in March 2012 with improved socialization, health, and behavior. The court found that father is not able to provide for T.P. He has unresolved substance abuse issues, pending criminal charges, and is not able to provide her with a stable home. He has not attended T.P.'s medical appointments, does not know what services she requires, and has not made an effort to find out how T.P. is doing. The court concluded that father will not be able to assume parenting within a reasonable period of time, and terminated father's rights. Father appeals.

When the termination of parental rights is sought, the trial court must conduct a two-step analysis. In re B.W., 162 Vt. 287, 291 (1994). The court must first find that there has been a substantial change in material circumstances; second, the court must find that termination of parental rights is in the child's best interests. Id. In assessing the child's best interests, the court is guided by the statutory criteria. 33 V.S.A. § 5114. The most important factor is whether the parent will be able to resume parenting duties within a reasonable period of time. In re J.B., 167 Vt. 637, 639 (1998) (mem.). On appeal, we will uphold the family court's conclusions if supported by the findings and affirm the individual findings unless clearly erroneous. In re A.F., 160 Vt. 175, 178 (1993).

On appeal, father does not challenge the court's findings or its conclusions that there was a change of circumstances and termination is in T.P.'s best interests. Instead, father argues that the order is invalid because it "dooms" T.P. to long-term foster care without providing a compelling reason. Father contends that in this case there was no evidence presented at the termination hearing to indicate that T.P.'s foster family intends to adopt her post-termination. Father extrapolates that T.P. will therefore remain in long-term foster care, an option this Court has described as "the least favorable placement" and that must be supported by a compelling reason. In re L.S., 172 Vt. 549, 550 (2001) (mem.); see 33 V.S.A. § 5321(a) (listing possible permanency goals).

Father's argument confuses the permanency plan requirements with the factors to consider at termination. The order on appeal concerned DCF's petition to terminate father's parental rights. Once a change of circumstances is found, termination revolves around the statutory best-interests factors. There is nothing in those factors that requires consideration of the particular permanency plan contemplated for the child, or the likelihood of adoption. See In re S.B., 174 Vt. 427, 430 (2002) (mem.) ("[W]e have repeatedly stated 'that a valid termination of parental rights does not depend on the availability of permanent foster care or adoption.' " (quoting In re D.M., 162 Vt. 33, 40 (1994)). While we recognize that a permanent, stable placement is in a child's best interests, when considering the best interests of the child, the family court is not required to find that adoption will follow termination. See In re E.B., 158 Vt. 8, 15 (1992).

Father also cites the 2011 permanent guardianship order as evidence that T.P. will not be adopted because a permanent guardianship depends on a finding that adoption is not likely within a reasonable period of time. See 14 V.S.A. § 2664(a)(2) (requiring family court to find prior to ordering a permanent guardianship that "Neither returning the child to the parents nor adoption of the child is likely within a reasonable period of time"). The circumstances at the time the permanent guardianship was imposed did not automatically extend to the time of the

termination hearing. The guardianship was revoked and the trial court here found this was a change in circumstances. Father emphasizes that the trial court did not specifically find that the circumstance of whether T.P. would be adopted had changed, but, as explained, this was not relevant at termination.

The critical question for the trial court was whether termination of father's rights was in T.P.'s best interests. Guided by the statutory best-interest factors, the court examined T.P.'s present situation in evaluating her best interests, including T.P.'s relationship to her foster parents, and T.P.'s adjustment to her foster home. See 33 V.S.A. § 5114(a)(1), (2). The court found that T.P.'s foster mother has played an integral role in T.P.'s life since 2009, and continues to engage T.P. in appropriate activities for her growth and well being. Since moving in with her foster family, T.P. has made significant medical, behavioral and social improvements. Whether the foster family intends to adopt T.P. is not clear from the record, but this was not a factor for the court to consider at termination. The family court duly weighed all of the relevant factors and determined by clear and convincing evidence that father could not assume parental responsibilities within a reasonable time, and that the balance of factors compelled a termination of parental rights. There are no grounds to disturb this decision.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice